## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| EVELYN HARRIS, individually and on behalf of all others similarly situated, | Case No.: 1:22-cv-943 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| PARKER HANNIFIN CORPORATION, | |
| Defendant. | |

Plaintiff Evelyn Harris ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant Parker Hannifin Corporation ("Parker Hannifin" or "Defendant") and alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant, and (4) there are more than 100 proposed Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

2.      This Court has general personal jurisdiction over Defendant because Defendant is a resident and citizen of this district, Defendant conducts substantial business in this district, and the events giving rise to Plaintiff's claims arise out of Defendant's contacts with this district.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendant is a resident and citizen of this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

4.      Plaintiff Evelyn Harris is a resident and citizen of Ohio.

5.      Defendant Parker Hannifin Corporation is an Ohio corporation with its principal place of business in Cleveland, Ohio.

## FACTUAL ALLEGATIONS

**I.      Parker Hannifin**

6.      Defendant Parker Hannifin is a multinational manufacturing and engineering company that specializes in motion and control technologies throughout the United States and the world.

7.      Defendant currently employs approximately 54,000 people worldwide.[1]

8.      Current and former employees of Defendant, like Plaintiff and Class members, provided certain Personal Identifying Information ("PII") to Defendant which is required as a condition of employment and to obtain employment benefits.

> This information may have included individuals' names in combination with one or more of the following: Social Security numbers, dates of birth, addresses, driver's license numbers, U.S. passport numbers, financial account information (bank account and routing numbers), online account usernames/passwords, enrollment information, including health insurance plan member ID numbers, [] dates of coverage, . . . dates of service, provider names, claims information, and medical and clinical treatment information.[2]

---

[1] https://www.parker.com/parkerimages/Parker.com/Controlled%20Documents/About-Us/Parker%20Hannifin%20Fact%20Sheet%20FY21.pdf
[2] https://www.prnewswire.com/news-releases/parker-hannifin-corporation-provides-notice-of-data-security-incident-301547357.html

2

9. PII of the employees' dependents and members of Parker's Group Health Plans is also stored on Defendant's IT systems.[3]

10. As a worldwide technology company with an acute interest in maintaining the confidentiality of the PII entrusted to it, Defendant is well-aware of the numerous data breaches that have occurred throughout the United States and its responsibility for safeguarding users' PII.

11. Defendant represents to its employees and the public that it possesses robust security features to protect PII.

12. Defendant's Privacy Policy specifically states that it takes steps to keep employees' PII secure:

> 3.3 DATA MINIMIZATION AND RETENTION
>
> Only the Personal Data that is necessary for a legitimate business reason or as required by applicable laws or regulations (the "Purpose") should be collected and Processed. When the Purpose for the Personal Data has ended or is no longer relevant, the Personal Data should be deleted, taking into consideration the relevant Records Retention and Protection Guidelines (1.04). Any retention of Personal Data beyond the relevant time period set forth in the Records Retention and Protection Guidelines (1.04) must be documented and explicitly state the reasoning for such retention beyond the specified period.
>
> . . .
>
> 3.4.1 Employment Related Personal Data
>
> Parker collects and uses Personal Data for the purposes of management and administration of its pre-employment, employment, and post-employment relationships. The Personal Data is collected and used for hiring activities, general workforce management (described further below), administering security at Parker facilities and on Parker information systems, and as necessary to maintain Parker's third party relationships with customers, suppliers, and other third parties. General workforce management includes, for example, time and attendance tracking, payroll, brokering, providing and administering services and other

---

[3] *Id.*

benefits to employees and their dependents and beneficiaries, job performance and talent management, production of company address books and directories, management of communication systems, training and employee development, providing and monitoring the use of company resources such as company vehicles, mobile phones, computers, and travel and mobility services, managing emergency contact details, and meeting governmental reporting requirements. For Parker employees in particular countries or regions, specific notices may be furnished that provide further details related to the Processing of Personal Data.

Parker maintains Sensitive Data only as required to provide its employees with agreed services and benefits or as required to comply with governmental reporting requirements. Parker, at all times, ensures that the collection and Processing of any Sensitive Data is limited and is done in a manner consistent with this Policy and applicable law.

. . .

3.4.6 Security

Parker takes reasonable precautions to protect Personal Data from loss, misuse, and unauthorized access, disclosure, alteration, and destruction. These precautions include, for example, password protections for online information systems, restricting access to Personal Data, and employing electronic security measures to protect against hacking or other unauthorized access. Additionally, Parker provides physical security to prevent unauthorized access to database equipment or hard copies of Personal Data.

## II.    The Data Breach

13.    On May 13, 2022, Defendant announced in a press release that it was investigating a data security incident that occurred on March 14, 2022. Defendant's investigation included assistance of a forensic investigation firm and other third-party cyber security and incident response professionals.[4]

14.    "Through the investigation, Parker determined that an unauthorized third party gained access to Parker's IT systems between the dates of March 11, 2022 and March 14, 2022.

---

[4] *Id.*

4

The investigation further determined that the unauthorized party accessed and may have acquired certain files on Parker's IT systems."[5]

15.     According to Defendant's assessment of the Data Breach, the files "may have included information related to current and former employees, their dependents, and members of Parker's Group Health Plans (including health plans sponsored by an entity acquired by Parker). This information may have included individuals' names in combination with one or more of the following: Social Security numbers, dates of birth, addresses, driver's license numbers, U.S. passport numbers, financial account information (bank account and routing numbers), online account usernames / passwords, enrollment information, including health insurance plan member ID numbers, and dates of coverage. For a very small number of these individuals, the files also included dates of coverage, dates of service, provider names, claims information, and medical and clinical treatment information."[6]

16.     Defendant stated that it would send letters to affected employees which would also provide two years of free identity protection services with Experian IdentityWorks.[7]

17.     Defendant sent a letter to Plaintiff dated May 10, 2022, notifying them of the breach. *See* Exhibit A.[8]

18.     Defendant did not state why it was unable to detect the unauthorized individuals accessing Defendant's servers.

19.     Defendant did not state why it waited for nearly two months before notifying affected employees.

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *See also* https://media.dojmt.gov/wp-content/uploads/Parker-Hannifin-Corporation-Consumer-Notification-Letter.pdf.

20.     Defendant failed to prevent the data breach because it did not adhere to commonly accepted security standards and failed to detect that its databases were subject to a security breach.

### III.     Injuries to Plaintiff and the Class

21.     As a direct and proximate result of Defendant's actions and omissions in failing to protect Plaintiff's PII, Plaintiff and the Class have been damaged.

22.     Plaintiff and the Class have been placed at a substantial risk of harm in the form of credit fraud or identity theft and have incurred and will likely incur additional damages in order to prevent and mitigate credit fraud or identity theft.

23.     In addition to the irreparable damage that may result from the theft of PII, identity theft victims must spend numerous hours and their own money repairing the impacts caused by this breach. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[9]

24.     In addition to fraudulent charges and damage to their credit, Plaintiff and the Class will spend substantial time and expense (a) monitoring their accounts to identify fraudulent or suspicious charges; (b) cancelling and reissuing cards; (c) purchasing credit monitoring and identity theft prevention services; (d) attempting to withdraw funds linked to compromised, frozen accounts; (e) removing withdrawal and purchase limits on compromised accounts; (f) communicating with financial institutions to dispute fraudulent charges; (g) resetting automatic billing instructions and changing passwords; (h) freezing and unfreezing credit bureau account information; (i) cancelling and re-setting automatic payments as necessary; and (j) paying late fees and declined payment penalties as a result of failed automatic payments.

---

[9] U.S. Dep't of Justice, *Victims of Identity Theft*, *2014* (Nov. 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf.

25.     Additionally, Plaintiff and the Class have suffered or are at increased risk of suffering from, *inter alia*, the loss of the opportunity to control how their PII is used, the diminution in the value and/or use of their PII entrusted to Defendant, and loss of privacy.

## IV.     The Value of Personal Identifying Information

26.     It is well known that PII, and financial account information in particular, is an invaluable commodity and a frequent target of hackers.

27.     According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.[10]

28.     People place a high value not only on their PII, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.[11]

29.     People are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers."[12] There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has

---

[10] Javelin Strategy & Research, *Identity Fraud Hits All Time High With 16.7 Million U.S. Victims in 2017, According to New Javelin Strategy & Research Study* (Feb. 6, 2018), https://www.javelinstrategy.com/press-release/identity-fraud-hits-all-time-high-167-million-us-victims-2017-according-new-javelin.
[11] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf.
[12] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 10, 2015), https://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html.

warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."[13]

30.     The PII of minors (like the dependents of many Class Members) can be used to receive illicit gains through methods such as credit card fraud with newly created accounts. The fact that a minor's social security number has not yet been used for financial purposes actually makes it more valued by hackers rather than less. The "blank slate" credit file of a child is much less limited than the potentially low credit score of an adult. Social security numbers that have never been used for financial purposes are uniquely valuable as thieves can pair them with any name and birthdate. After that happens, thieves can open illicit credit cards or even sign up for government benefits.[14]

## V.     Industry Standards for Data Security

31.     In light of the numerous high-profile data breaches targeting companies like Target, Neiman Marcus, eBay, Anthem, Deloitte, and Equifax, Defendant is, or reasonably should have been, aware of the importance of safeguarding PII, as well as of the foreseeable consequences of its systems being breached.

32.     Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

        a.   Maintaining a secure firewall configuration;

        b.   Monitoring for suspicious or irregular traffic to servers;

        c.   Monitoring for suspicious credentials used to access servers;

---

[13] Social Security Admin., *Identity Theft and Your Social Security Number*, at 6-7, https://www.ssa.gov/pubs/EN-05-10064.pdf.
[14] Richard Power, "Child Identity Theft: New Evidence Indicates Identity Thieves are Targeting Children for Unused Social Security Numbers," Carnegie Mellon CyLab, https://www.cylab.cmu.edu/_files/pdfs/reports/2011/child-identity-theft.pdf.

d.  Monitoring for suspicious or irregular activity by known users;

e.  Monitoring for suspicious or unknown users;

f.  Monitoring for suspicious or irregular server requests;

g.  Monitoring for server requests for PII;

h.  Monitoring for server requests from VPNs; and

i.  Monitoring for server requests from Tor exit nodes.

33.     The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[15] and protection of PII[16] which includes basic security standards applicable to all types of businesses.

34.     The FTC recommends that businesses:

a.  Identify all connections to the computers where you store sensitive information.

b.  Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c.  Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d.  Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.  Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks

---

[15] Start with Security: A Guide for Business, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[16] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting personalinformation.pdf.

    f.   Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

    g.   Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

    h.   Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

    i.   Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

35.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[17]

36.    Because Defendant was entrusted with employees' PII, it had, and has, a duty to employees to keep their PII secure.

37.    Employees, such as Plaintiff and the Class, reasonably expect that when they provide PII to Defendant, it will safeguard their PII.

---

[17] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement.

38.     Nonetheless, Defendant failed to prevent the data breach discussed below. Had Defendant properly maintained and adequately protected its systems, it could have prevented the data breach.

## CLASS ALLEGATIONS

39.     Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23.

40.     The proposed Class is defined as follows:

> **Nationwide Class:** All persons whose PII was maintained on Defendant Parker Hannifin Corporation's servers that were compromised in the Data Breach.

41.     Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Class based upon discovery and further investigation.

42.     *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. Although the precise number is not yet known to Plaintiff, Plaintiff reasonably approximates that the number of current employees affected by the data breach is approximately 54,000, and the number of former employees is also substantial.[18] The Class Members can be readily identified through Defendant's records.

43.     *Commonality*: Questions of law or fact common to the Class include, without limitation:

a.  Whether Defendant owed a duty or duties to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and obtaining their PII;

b.  Whether Defendant breached that duty or those duties;

---

[18] https://www.parker.com/parkerimages/Parker.com/Controlled%20Documents/About-Us/Parker%20Hannifin%20Fact%20Sheet%20FY21.pdf

11

    c.   Whether Defendant failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

    d.   Whether the security provided by Defendant was satisfactory to protect customer information as compared to industry standards;

    e.   Whether Defendant misrepresented or failed to provide adequate information to customers regarding the type of security practices used;

    f.   Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiff's and the Class's PII secure and prevent loss or misuse of that PII;

    g.   Whether Defendant acted negligently in connection with the monitoring and protecting of Plaintiff's and Class's PII;

    h.   Whether Defendant's conduct was intentional, willful, or negligent;

    i.   Whether Defendant violated any and all statutes and/or common law listed herein;

    j.   Whether the Class suffered damages as a result of Defendant's conduct, omissions, or misrepresentations; and

    k.   Whether the Class is entitled to injunctive, declarative, and monetary relief as a result of Defendant's conduct.

44.    *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

45.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, data breaches.

46.     *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

47.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

48.     *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

49.     The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

50.     The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

51.     Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(on behalf of the Class)**

52.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

53.     Defendant owed a duty of care to Plaintiff and Class members to use reasonable means to secure and safeguard the entrusted PII, to prevent its unauthorized access and disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems. These common law duties existed because Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and Class members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, Defendant knew that it was more likely than not Plaintiff and other Class members would be harmed by such exposure of their PII.

54.     Defendant's duties to use reasonable security measures also arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiff and Class members, on the other hand. The special relationship arose because Plaintiff and Class members entrusted Defendant with their PII, Defendant accepted and held the PII, and Defendant represented that the PII would be kept secure pursuant to its data security policies. Defendant alone could have ensured that its data security systems and practices were sufficient to prevent or minimize the data breach.

14

55.     Defendant's duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII. Various FTC publications and data security breach orders further form the basis of Defendant's duties. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

56.     Defendant's violations of Section 5 of the FTC Act constitute negligence per se.

57.     Defendant breached the aforementioned duties when it failed to use security practices that would protect the PII provided to it by Plaintiff and Class members, thus resulting in unauthorized third-party access to the Plaintiff's and Class members' PII.

58.     Defendant further breached the aforementioned duties by failing to design, adopt, implement, control, manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols to comply with the applicable laws and safeguard and protect Plaintiff's and Class members' PII within its possession, custody, and control.

59.     As a direct and proximate cause of failing to use appropriate security practices, Plaintiff's and Class members' PII was disseminated and made available to unauthorized third parties.

60.     Defendant admitted that Plaintiff's and Class members' PII was wrongfully disclosed as a result of the breach.

61.     The breach caused direct and substantial damages to Plaintiff and Class members, as well as the possibility of future and imminent harm through the dissemination of their PII and the greatly enhanced risk of credit fraud or identity theft.

62.     By engaging in the forgoing acts and omissions, Defendant committed the common law tort of negligence. For all the reasons stated above, Defendant's conduct was negligent and departed from reasonable standards of care including by, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; and failing to provide adequate and appropriate supervision of persons having access to Plaintiff's and Class members' PII.

63.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the Class, their PII would not have been compromised.

64.     Neither Plaintiff nor the Class contributed to the breach or subsequent misuse of their PII as described in this Complaint. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and the Class have been put at an increased risk of credit fraud or identity theft, and Defendant has an obligation to mitigate damages by providing adequate credit and identity monitoring services. Defendant is liable to Plaintiff and the Class for the reasonable costs of future credit and identity monitoring services for a reasonable period of time, substantially in excess of one year. Defendant is also liable to Plaintiff and the Class to the extent that they have directly sustained damages as a result of identity theft or other unauthorized use of their PII, including the amount of time Plaintiff and the Class have spent and will continue to spend as a result of Defendant's negligence. Defendant is also liable to Plaintiff and the Class to the extent their PII has been diminished in value because Plaintiff and the Class no longer control their PII and to whom it is disseminated.

## <u>COUNT II</u>
## INVASION OF PRIVACY
### (on behalf of the Class)

65.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

66.     Defendant invaded Plaintiff's and the Class's right to privacy by allowing the unauthorized access to their PII and by negligently maintaining the confidentiality of Plaintiff's and the Class's PII, as set forth above.

67.     The intrusion was offensive and objectionable to Plaintiff, the Class, and to a reasonable person of ordinary sensibilities in that Plaintiff's and the Class's PII was disclosed without prior written authorization from Plaintiff and the Class.

68.     The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiff and the Class provided and disclosed their PII to Defendant privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

69.     As a direct and proximate result of Defendant's above acts, Plaintiff's and the Class's PII was viewed, distributed, and used by persons without prior written authorization and Plaintiff and the Class suffered damages as described herein.

70.     Defendant is guilty of oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiff's and the Class's PII with a willful and conscious disregard of their right to privacy.

71.     Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause Plaintiff and the Class great and irreparable injury in that the PII maintained by Defendant can be viewed, printed, distributed, and used by unauthorized persons. Plaintiff and the Class have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff and the Class, and

Defendant may freely treat Plaintiff's and the Class's PII with sub-standard and insufficient protections.

## COUNT III
## UNJUST ENRICHMENT
### (on behalf of the Class)

72.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

73.     Plaintiff and the Class have an interest, both equitable and legal, in their PII that was conferred upon, collected by, and maintained by Defendant and that was ultimately compromised in the data breach.

74.     Defendant, by way of its acts and omissions, knowingly and deliberately enriched itself by saving the costs it reasonably should have expended on security measures to secure Plaintiff's and the Class's PII.

75.     Defendant also understood and appreciated that the PII pertaining to Plaintiff and the Class was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that PII.

76.     Instead of providing for a reasonable level of security that would have prevented the breach—as is common practice among companies entrusted with such PII—Defendant instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiff and the Class. Nevertheless, Defendant continued to obtain the benefits conferred on it by Plaintiff and the Class. The benefits conferred upon, received, and enjoyed by Defendant were not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain these benefits.

77.     Plaintiff and the Class, on the other hand, suffered as a direct and proximate result. As a result of Defendant's decision to profit rather than provide requisite security, and the resulting

breach disclosing Plaintiff's and the Class's PII, Plaintiff and the Class suffered and continue to suffer considerable injuries in the forms of, *inter alia,* attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, and increased risk of harm.

78.     Thus, Defendant engaged in opportunistic conduct in spite of its duties to Plaintiff and the Class, wherein it profited from interference with Plaintiff's and the Class's legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its conduct.

79.     Accordingly, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court award relief in the form of restitution or disgorgement in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically, the amounts that Defendant should have spent to provide reasonable and adequate data security to protect Plaintiff's and the Class's PII, and/or compensatory damages.

## COUNT IV
## BAILMENT
### (on behalf of the Class)

80.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

81.     Plaintiff and the Class provided, or authorized disclosure of, their PII to Defendant.

82.     In allowing their PII to be made available to Defendant, Plaintiff and the Class intended and understood that Defendant would adequately safeguard their PII.

83.     For its own benefit, Defendant accepted possession of Plaintiff's and the Class's PII.

84.     By accepting possession of Plaintiff's and the Class's PII, Defendant understood that Plaintiff and the Class expected Defendant to adequately safeguard their PII. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties. During the bailment (or

deposit), Defendant owed a duty to Plaintiff and the Class to exercise reasonable care, diligence, and prudence in protecting their personal information.

85.    Defendant breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiff's and the Class's personal information, resulting in the unlawful and unauthorized access to and misuse of their PII.

86.    As a direct and proximate result of Defendant's breach of its duty, Plaintiff and Class Members suffered consequential damages that were reasonably foreseeable to Defendant, including but not limited to the damages set forth above.

87.    As a direct and proximate result of Defendant's breach of its duties, the personal information of Plaintiff and the Class entrusted, directly or indirectly, to Defendant during the bailment (or deposit) was damaged and its value diminished.

<u>**COUNT V**</u>
**BREACH OF IMPLIED CONTRACT**
**(on behalf of the Class)**

88.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

89.    Defendant invited Plaintiff and the Class to provide their PII to Defendant. As consideration for the benefits Defendant was to administer, Plaintiff and the Class provided their PII to Defendant. When Plaintiff and the Class provided their PII to Defendant, they entered into implied contracts by which Defendant agreed to protect their PII and only use it solely to administer benefits. As part of the offer, Defendant would safeguard the PII using reasonable or industry-standard means.

90.    Accordingly, Plaintiff and the Class accepted Defendant's offer to administer benefits and provided Defendant their PII.

91.     Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant. However, Defendant breached the implied contracts by failing to safeguard Plaintiff's and the Class's PII.

92.     The losses and damages Plaintiff and the Class sustained that are described herein were the direct and proximate result of Defendant's breaches of its implied contracts with them. Additionally, because Plaintiff and the Class continue to be parties to the ongoing administration and distribution of benefits under the contracts, and because damages may not provide a complete remedy for the breaches alleged herein, Plaintiff and the Class are therefore entitled to specific performance of the contracts to ensure data security measures necessary to properly effectuate the contracts maintain the security of their PII from unlawful exposure.

93.     Defendant's conduct as alleged herein also violated the implied covenant of good faith and fair dealing inherent in every contract, and it is liable to Plaintiff and the Class for associated damages and specific performance.

### COUNT VI
### BREACH OF CONFIDENCE
### (on behalf of the Class)

94.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

95.     As alleged above, Plaintiff and the Class had agreements with Defendant, both express and implied, that required Defendant to keep their PII confidential.

96.     Defendant breached that confidence by disclosing Plaintiff's and the Class's PII without their authorization and for unnecessary purposes.

97.     As a result of the data breach, Plaintiff and the Class suffered damages that were attributable to Defendant's failure to maintain confidence in their PII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays

for a judgment against Defendant as follows:

a.  For an order certifying the proposed Class, appointing Plaintiff as Representative of the proposed Class, and appointing the law firms representing Plaintiff as counsel for the Class;

b.  For compensatory and punitive and treble damages in an amount to be determined at trial;

c.  Payment of costs and expenses of suit herein incurred;

d.  Both pre-and post-judgment interest on any amounts awarded;

e.  Payment of reasonable attorneys' fees and expert fees;

f.  Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated: June 3, 2022

Respectfully submitted,

*/s/Jeffrey S. Goldenberg*
Jeffrey S. Goldenberg (0063771)
Todd B. Naylor (0068388)
Robert B. Sherwood (0084363)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio  45242
Phone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
rsherwood@gs-legal.com

Charles E. Schaffer (*pro hac vice* forthcoming)
LEVIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
cschaffer@lfsblaw.com

*Counsel for Plaintiff and Proposed Class*